UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| EDWIN CALLIGAN, <br><br> Petitioner, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Respondent. | CAUSE NO. 1:17cr51 DRL <br> 1:22cv392 |

OPINION AND ORDER

Edwin Calligan filed a *pro se* petition to vacate his sentence under 28 U.S.C. § 2255. He later retained counsel. He argues that his trial and appellate attorneys provided ineffective assistance and that the sentencing court abused its discretion and erred at sentencing. The court denies the petition, after recounting the lengthier history of this case that began in 2017.

BACKGROUND

A.  *Warrant and Search.*

On June 16, 2017, Special Agent Jonathan Goehring applied for a warrant to search for evidence of a crime at a home in Fort Wayne, Indiana [79 at 2-3]. The application said the agent had reason to believe that controlled substances, including 5F-ADB,[1] and various items related to the distribution of controlled substances were being concealed at the home [79 at 3]. In an affidavit attached to the application, Special Agent Goehring stated that probable cause existed to believe that evidence of violations of 21 U.S.C. §§ 841(a)(1), 844, and 856 was in the home [79 at 3]. The affidavit described parcels that the United States Customs and Border Protection identified from a shipper suspected of shipping large quantities of synthetic drugs to the United States, including a parcel addressed to Edwin

---

[1] 5F-ADB is a synthetic cannabinoid that became a schedule I controlled substance on April 10, 2017 [161 at 1].

Calligan at the home (called the "Target Parcel") that was searched and found to contain a kilogram of 5F-ADB. [79 at 4]. The affidavit also described the agent's preliminary investigation into Mr. Calligan, his criminal history, and his receipt of dozens of international parcels, including four in the six weeks prior to the affidavit [79 at 4-5].

The agent reported that though he believed probable cause existed, he planned to work with other law enforcement agents to make "a controlled delivery of the TARGET PARCEL containing the 5F-ADB" and to execute the search warrant "after the TARGET PARCEL has been delivered" to the home [79 at 5]. After securing the search warrant, Special Agent Goehring became concerned for the safety of officers executing the warrant if the controlled substance was left inside the parcel given Mr. Calligan's violent history [79 at 6], so he switched the 5F-ADB for sham material and executed the search after its delivery [79 at 6].

The Allen County S.W.A.T. team executed the warrant [69 Tr. 33]. In the search warrant return, Special Agent Goehring erroneously listed "1 international parcel containing 1 kg of 5F-ADB" as one of the items seized, but later testified that he made a mistake in preparing the return because the package contained a sham substance rather than 5F-ADB [79 at 6-7].

On November 17, 2017, the government filed a superseding indictment charging Mr. Calligan with three counts: (1) unlawfully possessing a firearm as a felon, 18 U.S.C. § 922(g)(1); (2) intentionally and knowingly importing a controlled substance (5F-ADB) from Hong Kong to the United States, 21 U.S.C. § 952; and (3) knowingly and intentionally attempting to commit an offense against the United States, namely possession with intent to distribute a mixture and substance containing 5F-ADB, 21 U.S.C. § 846 [35]. Attorney Marcia Linsky represented Mr. Calligan at the trial level.

B.  *First Motion to Suppress.*

On January 23, 2018, Mr. Calligan moved to suppress physical evidence recovered from the search of his home. He argued that the warrant application said police would deliver actual drugs to him

2

so the agent's replacement of the drugs with flour and sugar took the search outside the warrant's scope. He said it was an anticipatory warrant and that the triggering event for the anticipatory warrant (the delivery of contraband) never occurred. The district judge (Judge Theresa Springmann) referred this suppression motion to the magistrate judge (Judge Paul Cherry)—the same one who had issued the warrant—for an evidentiary hearing [65].

At that hearing, Special Agent Goehring testified that he was familiar with anticipatory warrants but had not sought one in this case [69 Tr. 20-21]. He believed there was probable cause without any contraband delivery and had mentioned the delivery only because he predicted making it as part of executing the warrant [*id.* 22-23, 38]. He said he replaced the drugs because otherwise he would have had to include a tracking device—a step that he thought might pose a danger if Mr. Calligan found the device, given his violent history [*id.* 29-31]. Special Agent Goehring considered this issue only after obtaining the warrant [*id.* 11-12]. As for the incorrect information in the return, he testified that it was a mistake and that he had not intended to deceive anyone [*id.* 13-14].

The magistrate judge recommended denying Mr. Calligan's motion, concluding that Special Agent Goehring didn't intend to condition the warrant on the Target Parcel's delivery and didn't include this condition in his affidavit [79 at 10-11]. Further, the search warrant did not separately impose such a condition [*id.* 11]. Even so, the magistrate judge concluded there was probable cause without the controlled delivery [*id.* 12]. Over Mr. Calligan's objections, the district judge adopted these findings and recommendations and denied the motion [84], as well as Mr. Calligan's later motion to reconsider [92].

C.  *Second Motion to Suppress.*

On September 27, 2018, Mr. Calligan filed a second motion to suppress, arguing that the search warrant was a "no-knock" warrant without prior judicial approval [94]. He said the officers knocked on his door but never identified themselves or stated their intent before entering. The court denied the

3

motion, concluding that a violation of the knock-and-announce rule didn't authorize exclusion of evidence seized during the search because of the inevitable-discovery doctrine [96].

    D. *Rejection of Binding Plea and Motion for Recusal.*

On May 1, 2019, the case was reassigned to Judge Holly Brady [107]. Mr. Calligan entered into a binding plea on count two for a sentence of 100 months [100], which the court rejected on August 1, 2019, concluding that "the aggravating factors in this case are significant, and when weighed against the mitigating factors do not support a variance to 100 months" [120 at 11].

Mr. Calligan then moved for Judge Brady's recusal [122]. She referred the motion to a different judge (Judge Robert Miller, Jr.) [124] who denied it [125]. "The gist of Mr. Calligan's argument is that upon reading of the presentence investigation, Judge Brady became tainted by information she wouldn't have known during trial. She spoke at the sentencing hearing about Mr. Calligan's criminal history, alleged act of domestic violence on his pregnant girlfriend, and his continuing to sell controlled substances after investigators showed up with a search warrant. Mr. Calligan says that Judge Brady's statements at the sentencing hearing and her ensuing written order would lead a reasonable person to believe she has a bias against Mr. Calligan in this case." [125 at 2-3]. But "[t]he law requires presentence reports, Fed. R. Crim. P. 32(c)(1)(A), and further requires judges to read them before making [] sentencing decisions," so Judge Miller concluded that "any argument based on the propositions that Judge Brady must recuse because she learned of what might have been other criminal activity by Mr. Calligan, or because she learned from the presentence report that Mr. Calligan had pleaded guilty (though that information is on the public at docket, as well) must fail." [125 at 3].

    E. *Third Motion to Suppress.*

On September 12, 2019, Mr. Calligan moved to suppress the physical evidence from the search of his home for a third time [128]. He cited *Franks v. Delaware*, 438 U.S. 154 (1978), and argued that Special Agent Goehring's warrant application relied on materially false representations that police would

4

deliver 5F-ADB to the home before the search. The district judge referred the motion to a magistrate judge (Judge Susan Collins) [132]. Judge Collins recommended denying the motion without a hearing because Special Agent Goehring's affidavit yielded probable cause and the replacement of the drugs was immaterial [132]. The court agreed and denied the motion, over Mr. Calligan's objections [140].

    F.   *Trial and Sentencing.*

On December 18, 2019, the government filed a second superseding indictment, charging Mr. Calligan with the same offenses as the earlier superseding indictment: (1) unlawfully possessing a firearm as a felon, 18 U.S.C. § 922(g)(1); (2) intentionally and knowingly importing a controlled substance (5F-ADB) from Hong Kong to the United States from April 10, 2017 to October 12, 2017, 21 U.S.C. § 952; and (3) knowingly and intentionally attempting to commit an offense against the United States, namely possession with intent to distribute a mixture and substance containing 5F-ADB on or about June 20, 2017, 21 U.S.C. § 846 [142]. He proceeded to a three-day jury trial beginning on January 21, 2020 [166]. The jury found Mr. Calligan guilty on all three counts [172].

The United States Probation Office prepared a presentence investigation report [189]. Mr. Calligan objected to near every part of the guideline calculation. The court sustained his objections to the two-level enhancements for maintaining a drug premises and obstructing or impeding the administration of justice, U.S.S.G. §§ 2D1.1(b)(12) and 3C1.1, and overruled his objections to the drug quantity and the two-level enhancement for possessing a dangerous weapon, U.S.S.G. § 2D1.1(b)(1) [200]. A revised presentence report was created to reflect these rulings [201]. The guidelines recommended a sentence of imprisonment between 168 to 210 months, subject to the statutory maximum of 120 months on count one [201 ¶ 149].

On May 13, 2020, Mr. Calligan was sentenced to 210 months imprisonment, consisting of 120 months on count one, 210 months on count two to run concurrent to count one, and 210 months on

count two to run concurrent to counts one and two [204], with three years of supervised release concurrent.

G. *Appeal.*

Mr. Calligan appealed. At first, Attorney Vinu Joseph represented him, but later Attorney Beau Brindley was substituted [210]. The court of appeals affirmed the district court's ruling on Mr. Calligan's first and third motions to suppress, which concerned his argument that the warrant was an anticipatory warrant. The court determined that "the warrant was not anticipatory, and delivery of the actual drugs to [Mr.] Calligan was not a triggering condition. Objectively, no language in the warrant or affidavit conditions probable cause upon that anticipated delivery." *United States v. Calligan*, 8 F.4th 499, 503 (7th Cir. 2021). "Additionally, the magistrate judge rightly concluded that there was probable cause without the delivery of actual drugs." *Id.* Concerning Mr. Calligan's argument that Special Agent Goehring knowingly made false, material statements to get the warrant, the court of appeals determined that the "argument lacks merit" because the "supposed misrepresentation would not have altered the magistrate judge's probable cause determination" *Id.* at 504. "Finally, even if probable cause technically were lacking, Agent Goehring's good faith would make the evidence admissible." *Id.* The mandate issued November 18, 2021 [214].

H. *Motion to Vacate.*

On November 3, 2022, Mr. Calligan moved to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 [215]. He filed this motion *pro se*. He argues that his trial and appellate attorneys provided ineffective assistance, the district court abused its discretion, and the district court committed errors at his sentencing. The government responded on March 2, 2023 [236]. Mr. Calligan then retained counsel [237] who replied on his behalf on May 25, 2023 [243]. After reassignment to this presider, the court addresses Mr. Calligan's arguments in turn.

STANDARD

In extraordinary situations, the court may vacate, set aside, or correct a prisoner's sentence. 28 U.S.C. § 2255(a); *Hays v. United States*, 397 F.3d 564, 566-67 (7th Cir. 2005). The writ of *habeas corpus* is secured by the United States Constitution: "The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const., Art. I, § 9, cl. 2. Historically, criminal defendants subject to a final conviction were entitled to *habeas corpus* relief only if the court that rendered the judgment lacked jurisdiction. *Ex parte Watkins*, 28 U.S. 193, 202 (1830). The writ has since been expanded to provide prisoners relief from various violations of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2255(a); *Danforth v. Minnesota*, 552 U.S. 264, 272 (2008); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). This writ is not a substitute for direct appeal. *Doe v. United States*, 51 F.3d 693, 698 (7th Cir. 1995).

When reviewing a § 2255 petition, the court examines the petition and the entire record. The court will hold an evidentiary hearing when the petitioner alleges facts that, if proven, would entitle him to relief. *Torres-Chavez v. United States*, 828 F.3d 582, 586 (7th Cir. 2016); *see also* 28 U.S.C. § 2255(b). Allegations that prove merely "vague, conclusory, or palpably incredible" rather than detailed and specific won't suffice. *Machibroda v. United States*, 368 U.S. 487, 495 (1962). Likewise, when the petition and records conclusively show the petitioner isn't entitled to relief, the court needn't hold an evidentiary hearing. *Boulb v. United States*, 818 F.3d 334, 339 (7th Cir. 2016). That is the case here.

DISCUSSION

A. *Ineffective Assistance.*

Mr. Calligan argues that both trial and appellate counsel provided ineffective assistance. The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970) (collecting cases). To show a violation of this right, a defendant must establish that: (1) his counsel's representation "fell below an objective

7

standard of reasonableness," and (2) "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). "A defendant's failure to satisfy either prong is fatal to his claim." *Ebbole v. United States*, 8 F.3d 530, 533 (7th Cir. 1993). Courts "presume that counsel [was] effective, and a defendant bears a heavy burden in making out a winning claim based on ineffective assistance of counsel." *United States v. Farr*, 297 F.3d 651, 658 (7th Cir. 2002). An attorney's representation "need not be perfect, indeed not even very good, to be constitutionally adequate." *Delatorre v. United States*, 847 F.3d 837, 845 (7th Cir. 2017) (quotation omitted).

1.  *Trial Counsel.*

Mr. Calligan says his trial counsel provided ineffective assistance because she should have moved to reopen his motion to suppress after trial testimony from three S.W.A.T. team members testified that the execution of the search warrant was dependent on the delivery of the package. He says it was an anticipatory warrant and the executing officers didn't adhere to the conditions precedent such that the warrant was void. Mr. Calligan says his trial counsel was ineffective because she didn't file a motion to reconsider after this testimony was offered. He says a motion to reconsider then would have been compelling.

At trial, Officer Kramer said it was his understanding that there was a package to be delivered prior to serving the search warrant [222 Tr. 169]. Officer Bleeke said he was "told there was a package delivered prior to us" and that it was his understanding that the package would be delivered prior to the search warrant being served [*id.* 175-176]. Officer Loubier answered affirmatively when asked whether he had been advised that there was to be a package delivered before the search warrant was served [*id.* 181].

But this testimony does not contradict Special Agent Goehring's testimony that he didn't obtain an anticipatory warrant. Mr. Calligan characterizes this testimony as the officers believing they could execute the search warrant *only after* the package with 5F-ADB was delivered to the home, but that isn't

8

what the officers said. The officers' testimony—that they were aware that a package was to be delivered before the search warrant—does not mean that the package was to contain 5F-ADB or that they believed that its delivery was a condition precedent to their search. In fact, the officers' beliefs are consistent with Special Agent Goehring who testified that he had mentioned the delivery only because he predicted making it as part of executing the warrant. That the executing officers knew the plan to deliver the package does not mean that they believed they had to wait to execute the search warrant only after the package was delivered or that the plan could not change as the events unfolded.

When a claim of ineffective assistance is premised on an attorney's failure to file a motion to suppress, the defendant must prove that the motion would have been meritorious. *United States v. Cieslowski*, 410 F.3d 353, 360 (7th Cir. 2005). The defendant bears the burden of establishing that the law enforcement officer's conduct violated the constitution. *Rawlings v. Kentucky*, 448 U.S. 98, 104 (1980); *United States v. Longmire*, 761 F.2d 411, 417 (7th Cir. 1985). Mr. Calligan hasn't done that here. Conclusory assertions that the officers' testimony about being aware a package was to be delivered to the home means they must have believed they were executing an anticipatory warrant isn't enough. Nor would it change the calculus of probable cause.

Trial counsel's performance regarding the motion to suppress was reasonable. The court affords counsel "a strong presumption that [her] conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. The law generally declines to second-guess the strategic choices of attorneys. *United States v. Pergler*, 233 F.3d 1005, 1009 (7th Cir. 2000). Attorneys may have a "tactical reason not to make weak arguments." *United States v. Rezin*, 322 F.3d 443, 446 (7th Cir. 2003). Trial counsel brought two motions to suppress and one motion for reconsideration based on the theory that the search warrant was anticipatory. The court denied each [84, 140, 92]. It was within the objective standard of reasonableness for trial counsel to conclude that the court was unlikely to reach a different result, even considering the officers' testimony that they knew the plan was for a package to be delivered. The court

9

was already aware of this plan with the first suppression motion when Special Agent Goehring testified about it. Trial counsel preserved suppression objections at trial [222 Tr. 12-13]. She elicited the S.W.A.T. team's testimony [*id.* 169 (Officer Kramer), 175-176 (Officer Bleeke), 181 (Officer Loubier)].

There also was no prejudice here. The circuit addressed this issue and concluded that the warrant wasn't anticipatory. *United States v. Calligan*, 8 F.4th 499, 503 (7th Cir. 2021). It relied on the objective language in the warrant and affidavit and found that no language conditions probable cause upon delivery of the package. *Id.* Further, it found that probable cause existed without the delivery of actual drugs. *Id.* at 503-04. Mr. Calligan says the court of appeals didn't consider the officers' testimony, but that testimony would not have changed the analysis on the objective language of the warrant and affidavit or a conclusion that probable cause existed without the delivery. The choice to forgo a fourth motion to suppress wasn't ineffective or prejudicial. Accordingly, the court denies Mr. Calligan's petition on this ground.

Mr. Calligan next says his trial counsel was deficient when she failed to subpoena the devices that had accessed his Yahoo account after a laptop was seized as evidence. He says "discovery shows the account was accessed" sometime between the laptop being seized and the government requesting a warrant for the account. He says, "[i]f it is proved that agents or the government accessed the Yahoo account from that laptop while in their possession, the emails/evidence would have been suppressed." But relief under § 2255 cannot be based on conjecture or speculation. *See United States v. Coscia*, 4 F.4th 454, 482 (7th Cir. 2021); *Day v. United States*, 962 F.3d 987, 992 (7th Cir. 2020). This speculative claim about what might be proven if trial counsel subpoenaed the devices that accessed his Yahoo account doesn't demonstrate that her representation "fell below an objective standard of reasonableness;" or that but for this alleged error, Mr. Calligan's proceedings would have had a different result.

Finally, Mr. Calligan says his trial counsel failed to object to the enhancement for a high-capacity clip when he did not have a high-capacity clip. At sentencing, Mr. Calligan objected to the two-level enhancement for possession of a firearm [200; 225 Tr. 12]. The court overruled the objection [200 at 5-

6; 225 Tr. 14] and applied the enhancement based on the firearm Mr. Calligan possessed. Mr. Calligan did not receive an enhancement based on a high-capacity magazine. Therefore, Mr. Calligan cannot establish ineffective assistance or prejudice.

    2. *Appellate Counsel.*

Mr. Calligan says his appellate counsel provided ineffective assistance. Appellate counsel performs ineffectively if he "fails to argue an issue that is both obvious and clearly stronger than the issues raised." *Martin v. Evans*, 384 F.3d 848, 851 (7th Cir. 2004). The petitioner must also establish prejudice—that is, that raising the issue would have changed the appeal's outcome. *Howard v. Gramley*, 225 F.3d 784, 791 (7th Cir. 2000). Mr. Calligan presents two arguments.

First, he asserts that, before trial, Judge Brady ruled that an email was inadmissible, but following testimony admitted it. He says this issue should have been raised on appeal. This is the entirety of Mr. Calligan's skeletal argument. He doesn't explain what the trial court ruled, why it was an error, or what his appellate counsel should have argued.

On day two of trial, while the jury was on a break, the government first raised the email issue [223 Tr. 101]. The emails were between Mr. Calligan and "Lilly" (whose email account was "Mr. Chemistry") from April 2 to April 11, 2016, discussing prices and orders for various products. In an April 2 email, Lilly advised the strengths of various products and that "abc and 5fur144 are illegal products [and] I sell them only for big clients and good clients like you" [243 at 24]. Mr. Calligan responded, asking prices for mmbc, 5fur144, and FubAmb. After discussing pricing, Mr. Calligan wrote, "I will purchase [] the amb with my next order & the fur144 with the order after that" [243 at 23].

The government argued that Mr. Calligan opened the door to this evidence in his opening statement when he argued that he thought he was ordering legal drugs [223 Tr. 102]. Mr. Calligan responded that the emails didn't bear on whether he knew that the F5-ADB the indictment alleged he ordered from April 10, 2017 to October 12, 2017 [142] was illegal because the emails were a year before

11

the conduct alleged in the indictment and the emails were just a conversation and not definitive evidence that the packages were shipped [223 Tr. 104-105]. He argued that the "possible confusion for the jury far outweighs any relevant issue as to his intention, because it's for one, it's too far away from the charged time frame. For two, it's not the same substance that we're discussing here and doesn't go to his knowledge about the F5-ADB" [223 Tr. 105]. The court ruled: "I'm not going to allow it. I agree with the defendant's position. It is too far removed in time and it also does not speak to his knowledge as to this particular drug the 5F-ADB that he was purchasing, so I'm not going to allow the 2016 communications about substances that were different, even if they were illegal." [223 Tr. 105-106].

On the third day of trial, Mr. Calligan testified that when he ordered the 5F-ADB he was trying to purchase only legal substances: "Q: So what did you do to make sure you weren't doing anything illegal? A: I let her know my intentions. My intentions were to purchase items that was not on the banned list. I stated that to her multiple times" [224 Tr. 81]. A sidebar ensued to discuss the email evidence.

At the sidebar, Mr. Calligan argued that the government asked questions to elicit answers to open the door to that evidence, but the court concluded that the government "did not lead him there" [*id.* 83] and that Mr. Calligan's testimony opened the door to the emails. The court determined "I'm going to allow it, because it goes to his credibility, the issue of prior email where you specifically asked him something that's on the banned list goes to his credibility. He's opened that door." [*id.* 83]. Mr. Calligan objected, noting that he believed the government opened the door.

Before the government continued its questioning, Mr. Calligan asked for a second sidebar. He made an additional objection to the emails—hearsay [*id.* 84]. He also expressed concern that the emails didn't sufficiently conclude that what may have been ordered was in fact a controlled substance at the time of the order [*id.* 84-85]. The government responded that two of the products discussed in the emails were illegal and that the emails went to his knowledge and cut against his claim that he was just a middleman who didn't know what was occurring. The court ruled that it was "allowing [Mr. Calligan] to

12

make [his] record, but – I'm [not] going to change my ruling. I agree, it goes to his credibility and it goes to [his] knowledge" [*id.* 86]. The government introduced the emails as Exhibit 100.

Here, the government attempts to respond to Mr. Calligan's skeletal argument, saying the emails were admissible at trial because they were relevant and there is little chance the court of appeals would have found an abuse of discretion as to their relevance.

In reply, Mr. Calligan attempts to recast his argument. He now says this was Rule 404(b) evidence, but the government provided no 404(b) notice of any kind before trial and that an "additional ground of the ruling [to exclude the emails on day two] could have been that the government had violated the written pretrial notice requirements of Rule 404(b)(3) and surprised the defense with this 404(b) other acts evidence." Mr. Calligan argues that on day three the court "admitted this evidence without conducting the analysis under FRE 404(b)/FRE 403 that is required in this circuit."[2] He says his appellate counsel should have raised a Rule 404(b) argument on appeal.

Mr. Calligan also argues that "the unfair prejudice from these emails and the potential for confusing the jury with respect to the defendant's relevant knowledge of the illegality in 2017 of 5F-ADB was substantial, even 'great.' Given that there was no or almost no probative value, the April 2016 email evidence should have been excluded on FRE 403 grounds alone." He says his appellate counsel should have raised a Rule 403 argument on appeal too. In reply, Mr. Calligan presents a declaration from his appellate counsel. He attests, "I acknowledge that there was an issue with the handling of the email in question. This was a potential appellate issue that could have been developed and was not." [243 at 20]. It remains unclear which argument specifically appellate counsel means.

But the fact of the matter is that Mr. Calligan did not offer any Rule 403 or 404(b) arguments in his opening brief. He doesn't "state the facts supporting each ground" for relief as required by Rule 2(b).

---

[2] He cites to two cases explaining the court's obligations when ruling on a Rule 404(b) objection. *See United States v. Gomez*, 763 F.3d 845 (7th Cir. 2014); *see also United States v. Thomas*, 986 F.3d 723, 728 (7th Cir. 2021). But the district court wasn't ruling on a Rule 404(b) objection here.

13

He only provided the court with very scant assertions to support this claim: "Before trial, there was an email Judge Brady ruled was inadmissible. However, during my testimony, the government moved again to have it entered and it was granted. Appellate counsel failed to raise the issue on appeal." It wasn't until his reply—after the government's response and well after the one-year statute of limitations—that he provided facts to support this new claim.

"The strict one-year limitations period would be rendered illusory if a petitioner could circumvent it at will by filing a timely skeletal petition, asserting only general and conclusory claims, then avail himself of relation back principles to fill in those claims at his leisure after the one-year limitations period expires." *Champion v. United States*, 2022 U.S. Dist. LEXIS 37047, 16-17 (W.D.N.C. March 2, 2022); *see also Okechuku v. United States*, 2021 U.S. Dist. LEXIS 123102, 21 (N.D. Tex. June 14, 2021) ("[petitioner] argues that the ineffective assistance of counsel claims in his amended § 2255 motion relate back to the 'undeveloped' [] claim that his trial attorney 'failed to object to several critical items that were used to enhance [his] sentence and prevent him from preparing for a [ ] proper defense at trial' [] This argument lacks merit."); *United States v. Marshall*, 2018 U.S. Dist. LEXIS 140447, 2 (S.D. Miss. Aug 20, 2018) ("A defendant seeking relief under § 2255 may not circumvent the one-year statute of limitations 'by filing a timely, albeit threadbare, "place holder" § 2255 petition incanting the vaguest of buzzwords about his claims, then avail himself of relation back principles to fill in those claims at his leisure after the one-year limitations period expires.'"); *United States v. Woods*, 2016 U.S. Dist. LEXIS 91659, 2 (D. Kan. July 13, 2016) (denying the § 2255 petition and denying petitioner's request for an extension of time to file a supporting memorandum "because [the § 2255] petition is wholly conclusory [and thus] . . . there is no amendment that could 'relate back' to any specific claims raised."); *United States v. Crawley*, 2010 U.S. Dist. LEXIS 115491, 11 (S.D. Tex. Oct. 29, 2010) (finding that the original ineffective assistance claims were devoid of facts, much less operative facts, and a "'place-holder' § 2255 motion cannot serve to extend the limitations period for claims that have not been sufficiently asserted."). Accordingly, Mr. Calligan's

argument that his appellate counsel should have raised a Rule 404(b) or 403 argument is untimely and does not relate back to his original timely-filed motion to vacate.

Second, Mr. Calligan argues that his appellate counsel provided ineffective assistance when he failed to raise the issue that the magistrate judge held him to a higher standard than the law required when denying his request for a *Franks* hearing. This is a one sentence argument left undeveloped in reply. Appellate counsel addressed this issue briefly in his declaration, recognizing "that there was indeed a potential issue regarding the Franks standard utilized by the Court" and that the appeal "could have" addressed the issue.

The government says there would have been no basis for appellate counsel to appeal any errors in the magistrate judge's recommendation unless these errors recurred in the district court's final decision on the matter. Mr. Calligan doesn't argue that the district court did so, only that the magistrate did. What's more, the court of appeals looked at the *Franks* hearing issue specifically:

> That leaves Calligan's contention that Agent Goehring knowingly made false, material statements to get the warrant—specifically, that agents would deliver actual drugs before searching the home. He also urges that Agent Goehring's misstatement on the warrant return (that the drugs from the intercepted package were found in the resulting search) is evidence of his intent to deceive the magistrate judge. This argument lacks merit. To be sure, a search warrant is invalid if police obtain it by deliberately or recklessly presenting false, material information. *See Franks*, 438 U.S. at 155–56; *United States v. Woodfork*, 999 F.3d 511, 516 (7th Cir. 2021). But to receive a hearing on this point, Calligan had to make an initial showing that Agent Goehring's incorrect prediction was material to the warrant. *See United States v. Clark*, 935 F.3d 558, 563 (7th Cir. 2019). He has not. The supposed misrepresentation would not have altered the magistrate judge's probable cause determination; as we explained, there was probable cause for the search without the delivery of the actual drugs.

*Calligan*, 8 F.4th 499 at 504. Even on this slightly augmented record, Mr. Calligan hasn't shown that appellate counsel failed to argue an issue that was both obvious and clearly stronger than the issues raised or that Mr. Calligan was prejudiced. Raising the issue would not have changed the appeal's outcome when it was effectively addressed already. Mr. Calligan thus has failed to meet his burden on his ineffective assistance of counsel claims.

B.  *District Court's Discretion.*

Next, Mr. Calligan argues various ways the district court abused its discretion. First, he centers on the trial judge's law clerk. Mr. Calligan says before trial his significant other met with an attorney to discuss his case. At sentencing, Mr. Calligan learned that this lawyer was one of the trial judge's law clerks. He asked his lawyer if there was a potential conflict of interest and she advised there was not. Mr. Calligan says he should have been appointed a different judge. Second, Mr. Calligan says it was an abuse of discretion for the district judge not to remove herself from the case in response to his recusal motion. Third, Mr. Calligan says at sentencing the district court ruled it was not using an incident of uncharged misconduct (an alleged battery) against him, but the printed reasons for sentencing him to the high end stated it was because of this very same uncharged misconduct.

Mr. Calligan did not raise any of these issues on appeal. "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent." *Bousley v. United States*, 523 U.S. 614, 622 (1988) (quotations and citations omitted). To show cause, a defendant typically must show either ineffective assistance of counsel or actual innocence. *Edwards v Carpenter*, 529 U.S. 446, 450-51 (2000); *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013). Mr. Calligan has not established either that appellate counsel performed ineffectively (nor argued this) or that he is actually innocent of the crimes. These claims are defaulted—the court need not address their merits.

C.  *Sentencing Errors.*

Finally, Mr. Calligan argues that there were various errors in his sentence. He says he shouldn't have received an enhancement for "maintaining a common nuisance" because it was never proven that drugs had entered the home at any time. Second, he says the drug quantity calculation was incorrect because "other seizures of contraband should not have been included" as they were "not tested by anyone other than DHL shipping." Third, Mr. Calligan raises another alleged error with the drug quantity

16

calculation, arguing that the seized money should not have been converted to drugs because he says no drugs were found in the home. As before, Mr. Calligan has defaulted these claims. He did not raise them on appeal, did not argue that appellate counsel was ineffective for failing to do so, and presents no evidence of actual innocence.

D.  *Certificate of Appealability.*

Mr. Calligan fails to offer facts that, if proven, would entitle him to relief. As such, no hearing is necessary, and Mr. Calligan's petition is denied. *See Anderson v. United States*, 981 F.3d 565, 578 (7th Cir. 2020); *Martin v. United States*, 789 F.3d 703, 706 (7th Cir. 2015).

Under Rule 11 of the Rules Governing Section 2255 Proceedings, the court must also consider whether to grant or deny a certificate of appealability. If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2). A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); Rule 11 of Rules Governing Section 2255 Cases. The substantial showing standard is met when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id.* Based on the often-skeletal assertions Mr. Calligan has made in this petition, including assertions that were defaulted or those raised in reply that were time-barred, in ready contrast to the record before the court, reasonable jurists could not debate the conclusions today. The court thus denies a certificate of appealability.

CONCLUSION

The court GRANTS Mr. Calligan's motion for leave to file the declaration of Beau Brindley [242], DENIES Mr. Calligan's petition to vacate his sentence under 28 U.S.C. § 2255 [215], and DENIES a certificate of appealability. This order terminates the civil case [Cause No. 1:22-CV-392].

SO ORDERED.

April 3, 2024                                    *s/ Damon R. Leichty*
                                                 Judge, United States District Court